KING, Justice,
dissenting:
¶ 35. Prior to issuing the “death penalty” of civil sanctions, the trial court failed to adequately apply the correct standard to the unique facts presented in today’s case. Because this case should be remanded for a comprehensive hearing to determine the appropriate sanction, if any, I dissent.
¶ 36. Although the majority correctly quotes this Court’s standard of review applied to discovery sanction cases, the majority ignores this Court’s longstanding guidance to trial courts: “the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances.” Pierce v. Heritage Props., Inc., 688 So.2d 1385, 1388 (Miss.1997) (citing Hapgood v. Biloxi Reg’l Med. Ctr., 540 So.2d 630, 634 (Miss.1989)). When determining the appropriateness of sanctions under Rule 37, the following four factors are considered:
First, dismissal is authorized only when the failure to comply with the court’s order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situation[s] where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party’s preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party’s simple negligence is grounded in confusion or sincere misunderstanding of the court’s orders.
Id. at 1389 (quoting Batson v. Neal Spelce Assocs., 765 F.2d 511, 514 (5th Cir.1985)).
¶ 37. In Pierce, 688 So.2d at 1392, this Court upheld the trial court’s dismissal under Rule 37. The plaintiff in Pierce was injured when a ceiling fan in her apartment fell. Id. at 1387. The jury returned a verdict in favor of the plaintiff, but the trial court granted a new trial due to an improper closing argument. Id. In the first trial and during discovery for the *988 second trial, the plaintiff maintained that there were no eyewitnesses to the incident. Id. The defendants received an anonymous phone call after the first trial stating that the plaintiff was not alone when the incident occurred. Id. at 1388. The plaintiff identified the witness only after she realized the defendants were aware of the witness’s existence. Id. In his deposition, the witness confirmed that he was present during the incident. Id. This Court found that dismissal was proper in Pierce because the plaintiffs failure to disclose the existence of a material witness was willful, “obstructed the progress of litigation,” and constituted bad faith. Id. at 1390.
¶ 38. In Scoggins v. Ellzey Beverages, Inc., 743 So.2d 990, 997 (Miss.1999), this Court affirmed the trial court’s dismissal of a plaintiffs personal-injury claim when the plaintiff concealed material parts of her medical history. The plaintiff in Scog-gins complained of injuries to her foot, leg, and back. Id. at 991. The plaintiff denied having prior injuries to these areas in both her interrogatory responses and deposition testimony. Id. at 991-92. After the plaintiff responded to discovery and provided deposition testimony, the defendants obtained her medical records, which showed that she had been treated for pain, numbness, and arthritis in her legs, back, hips, shoulder, neck, and elbows for approximately eighteen years before her accident. Id. at 992. This Court found that dismissal was proper in Scoggins because the plaintiff “wilfully submitted false answers to interrogatories and knowingly did not answer deposition questions truthfully.” Id. at 997.
¶ 39. Although this Court has upheld trial courts’ dismissals under Rule 37, we also have found that dismissal is not appropriate in other circumstances. In Wood ex rel. Wood v. Biloxi Public School District, 757 So.2d 190, 195 (Miss.2000), this Court reversed the trial court judgment when the dismissal was based on one interrogatory response that could have been interpreted in various ways. The plaintiff in Wood was injured when a school bus rear-ended his car. Id. at 192. The plaintiff responded to an interrogatory about the extent of his injuries; the response stated: “These injuries affected my attitude, my concentration, my school work, and my ability to do manual labor. I no longer am able to enjoy tinkering with automobiles as the stooping, bending, and squatting are painful.” Id. During discovery, the defendants obtained surveillance video of the plaintiff bending, twisting, and squatting while performing tasks at a tire shop. Id. The defendants filed a motion to dismiss under Rule 37, claiming that the plaintiff had lied in his interrogatory response, and the trial court granted the motion. Id. We reversed, finding that the allegedly false interrogatory response was open to multiple interpretations. Id. at 194. Further, this Court recognized that the plaintiff had testified in his deposition that he was able to perform manual labor, but that it was more painful than before the accident. Id. at 194. This Court stated:
The School District would have a much stronger case if Wood had asserted during his deposition that he was in fact unable to perform his work functions as before.... [T]he fact remains that Wood acknowledged in his deposition that he was able to perform tasks as before the accident. The present case does not involve one of “those rare instances where the conduct of a party is so egregious that no other sanction will meet the demands of justice,” the trial court abused his discretion in concluding otherwise.
Id. at 194-95 (quoting Scoggins, 743 So.2d at 997).
*989 ¶ 40. The unique and particular facts of today’s case fall somewhere between the egregious acts contemplated by Pierce and Scoggins and the single, vague discovery response in Wood. As such — and as discussed in more detail below — the trial court should have held a comprehensive hearing on the Defendant’s motion prior to issuing the “death penalty” of sanctions.
¶ 41. The majority implies that, because the trial court in today’s case cited our holdings in Pierce and Scoggins, that the correct legal standard was applied and this case should be affirmed. (Maj.Op-¶ 11.) Mere citation to this Court’s standard is not sufficient. The standard must be actually and correctly applied, not just passingly referenced.
¶42. Based on Pierce, 688 So.2d at 1398, the first consideration is whether “the failure to comply with the court’s order results from wilfulness or bad faith, and not from the inability to comply.” The trial court in today’s case found that the Ashmores’ interrogatory responses and deposition testimony contained “willful misrepresentations.” David’s interrogatory responses did omit material parts of his medical history. But, unlike the plaintiffs in Pierce and Scoggins, David clarified these omissions in his deposition when he admitted having a prior back injury, right-knee surgery, and an injury to his left leg. In his deposition, David denied having left-knee surgery prior to the accident. And the medical records the Mississippi Defendants cite in support of their contention that David had surgery on his left knee prior to the accident do not unequivocally establish that as fact. For example, the Mississippi Defendants cite an October 1, 2008, medical record which states that David had surgery on his left and right knees. In response, the Ashmores point out that David did, in fact, have surgery on his left knee on July 17, 2008 — approximately four months after the accident. Further, although David provided a complete medical-records release to the Mississippi Defendants, they have produced only one medical record from before the accident which supports their contention that David had left-knee surgery prior to the accident — a March 10, 2008, entry in David’s family physician’s record stating that David “has had surgery before on his knees.” They have not, however, produced actual records of the alleged surgery.
¶ 43. The Mississippi Defendants also claim that the Ashmores provided false testimony regarding the bases of David’s disability. David and Debra both stated in their depositions that David’s disability was attributable only to his injuries from the ear accident. David’s Social Security application, however, listed David’s heart problems and diabetes as conditions that contributed to his inability to work, in addition to the injuries from the car accident. Interestingly, Debra testified in her deposition that David’s heart problems and diabetes were exacerbated by the surgeries and medication he received as a result of the accident.
¶44. The Mississippi Defendants also claim that Debra provided false testimony as to whether she was seeking damages for her nursing services and emotional distress in the present case as well as the unrelated nursing-home-negligence case she filed on behalf of her father. While there are inconsistencies in Debra’s testimony and written discovery, these statements, standing alone, would not warrant sanctions. Like the interrogatory response in Wood, Debra’s interrogatory response in the nursing-home case was vague and open to more than one interpretation. The response stated that Debra had not been treated for mental or emotional distress in a matter unrelated to the *990 nursing-home case — for example, today’s case. The response did not, however, state that Debra had not experienced mental or emotional distress. Further, although Debra testified that she was not seeking damages for her nursing services in the nursing-home case, the complaint for the nursing-home case clearly stated that she was seeking this type of damages. It should be noted, however, that the nursing-home complaint had not been served at the time of Debra’s deposition.
¶ 45. The second consideration in determining whether a trial court abused its discretion in dismissing a case with prejudice under Rule 37 is whether the “deterrent value of Rule 87 cannot be substantially achieved by the use of less drastic sanctions.” Id. Essentially, the trial court must consider whether lesser sanctions such as attorneys’ fees, limiting testimony, or fines would provide a sufficient deterrent value. As part of this consideration, courts should be mindful of deterring discovery abuses for not only the present case, but for future cases as well. White v. White, 509 So.2d 205, 209 (Miss.1987). Dismissal for discovery violations is “draconian” and a “remedy of last resort” that should only be applied in extreme circumstances. Id.
¶ 46. In Scoggins, 743 So.2d at 994, the trial court provided a detailed analysis of the lesser sanctions available and why the sanctions would not deter discovery abuse in that case. The trial court considered fines and awarding attorneys’ fees to the plaintiff that were attributable to its Rule 37 motion. Id. Because discovery in the case had concluded, the trial court found that lesser sanctions would not provide an adequate deterrent. Id.
¶47. In today’s case, the trial court recognized the lesser-sanctions discussion in Scoggins, but failed to analyze whether lesser sanctions would be appropriate in this case:
The Court is cognizance [sic] of the fact the Supreme Court has mandated it impose the least restrictive sanction that will accomplish the purpose for which it is imposed. The Court has also considered the Supreme Court’s discussion of simply allowing for vigorous cross-examination or imposing fees or reducing the verdict. As to imposing fees or reducing the verdict, the Supreme Court noted in Scoggins, the trial court properly found such a sanction creates several problems such as what to do if the defense obtains a verdict in its favor.
[[Image here]]
As stated supra, the Court is aware of the precedent set by the case law on this issue. Dismissal is an extreme sanction. However, the Court having carefully reviewed the pleadings and the transcript finds dismissal is appropriate in this action. As noted by the trial court in Scoggins, “the Court finds that perhaps the most compelling reason for granting the Defendant’s motion is to redress an apparently deliberate attempt to subvert the judicial process.”
Although the trial court stated that dismissal is “appropriate in this action” and discussed this Court’s holding in Scoggins, the reasoning behind this conclusion is totally absent. Levying the “death penalty” of discovery sanctions requires more than recognizing this Court’s precedent with respect to these sanctions; the precedent must be applied to the facts of the present case.
¶ 48. The third factor to be considered is whether the other party’s preparation for trial was substantially prejudiced. Pierce, 688 So.2d at 1389. The Mississippi Defendants claim that they suffered prejudice in wasted litigation resources, through general frustration, and “re-working” their *991 litigation strategy. The trial court’s order does not address prejudice to the Mississippi Defendants. And at the hearing, the trial court stated that it was “not so concerned” with prejudice. Pierce, 688 So.2d at 1391, recognized that there is not a requirement that the defendant be substantially prejudiced by the plaintiff’s conduct. The court may, however, consider prejudice in determining whether a sanction is warranted. Id.
¶ 49. A party will likely suffer at least some prejudice in the case of incomplete or incorrect discovery responses. See id. at 1389 (“A false answer is in some ways worse than no answer [because] it misleads and confuses the party”). In today’s case, however, discovery was still in its infancy. The Mississippi Defendants noticed the depositions of thirty-four expert witnesses, and only one expert deposition had occurred prior to the hearing on the motion to dismiss.
¶ 50. The final consideration is whether the “neglect is plainly attributable to an attorney rather than a blameless client, or when a party’s simple negligence is grounded in confusion or sincere misunderstanding of the court’s orders.” Id. at 1389. The trial court did not specifically address this factor in his order dismissing the case. The Ashmores do not claim that the neglect is attributable to their attorney, but instead claim that the confusion stems from David not knowing that surgical clips were used during his heart surgery. Surgical clips were, in fact, placed near David’s left knee during a heart surgery.
¶ 51. There are clear omissions and inconsistencies in the Ashmores’ discovery responses and deposition testimony. And these omissions may warrant some type of sanction. See Pierce, 688 So.2d at 1389. For the most part, however, the Ashmores either clarified omissions in their depositions or attempted to explain the inconsistencies — for example, Debra’s testimony relating to David’s heart problems and diabetes being exacerbated by his car-accident injuries.
¶ 52. Further, the facts of today’s case are unique and distinguishable from Pierce and Scoggins. In those cases, there was no dispute as to whether the plaintiffs had willfully omitted information in discovery. The plaintiff in Pierce, 688 So.2d at 1388, failed to disclose the existence of a witness, despite the case going through discovery and trial; but she did not contest the existence of the witness. And the plaintiff in Scoggins, 743 So.2d at 997, did not disclose relevant medical history in both her interrogatory responses and deposition; but she simply rebutted the discovery-violation claim by stating that she had a poor memory. In the present case, actual disputes exist as to whether the Ash-mores willfully concealed information. The parties disagree as to whether David had left-knee surgery prior to the accident. And the parties also contest the bases of David’s disability.
¶ 53. Because of the particular facts of this case, I find that the trial court should have conducted a comprehensive hearing on the Mississippi Defendants’ motion to dismiss. While counsel for each side provided argument on the motion, testimony from the Ashmores and further medical evidence would have aided in resolving the disputes discussed above. I recognize that an in-depth hearing is not required — or even necessary — in most cases. See Allen v. Nat’l R.R. Passenger Corp., 934 So.2d 1006, 1016 (Miss.2006). But in today’s case, this type of hearing is needed to fully analyze the issues presented by the Mississippi Defendants’ motion to dismiss and the Ashmores’ response to the motion, as well as to determine the appropriate sanction.
*992 ¶ 54. For this same reason, an order detailing the trial court’s analysis for each Pierce factor is necessary in today’s.case. The trial court’s order did not thoroughly address each of the four considerations. Again, I recognize that this type of analysis is not necessary for all Rule 37 motions. See Smith v. Tougaloo Coll, 805 So.2d 683, 640-41 (Miss.Ct.App.2002). But the facts of today’s case require it. For example, although the trial court’s order cited the lesser-sanction analysis in Scoggins, the trial court did not address why lesser sanctions, such as costs associated with additional discovery or impeachment, would not provide a sufficient deterrent in today’s case. Considering the discussion above, lesser sanctions may very well be appropriate; and a comprehensive hearing will likely aid in determining the proper sanction.
¶ 55. To be clear, considering the unique facts of today’s case, I find that the trial court should have held a comprehensive hearing and entered a detailed order analyzing the Pierce factors. Contrary to the majority’s assertion that I am “offering relief’ for the Ashmores, I am simply ensuring that the trial court is compliant with this Court’s directive in discovery sanction cases — that “the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances.” Pierce, 688 So.2d at 1388 (emphasis added); Allen, 934 So.2d at 1008. This Court must “consider[] whether the [trial court’s] decision was one of several reasonable ones which could have been made.” Id. As discussed above, the unusual facts of today’s case present questions as to whether this is one of the “most extreme circumstances” contemplated by this Court’s precedent. As such, whether the trial court’s decision was reasonable cannot be determined from the record.
¶ 56. For the reasons discussed above, I would reverse the trial court’s judgment and remand the case for proceedings consistent with this opinion.
KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.